United States District Court
Middle District of Florida
Orlando Division

**SIMON FISHER,**

> *Plaintiff,*

v.                                                                    **NO. 6:24-cv-1766-WWB-NWH**

**I.C. SYSTEM, INC., ETC.,**

> *Defendants.*

---

# Order

Simon Fisher sues his former lawyer (Michael Hurckes), two law firms associated with Hurckes (MAH Advising, PLLC, and Ironclad Law, LLC), and a debt-collection company (I.C. System, Inc.) for alleged violations of debt-collection laws. D1. Fisher moves to strike papers and for consideration of an order to show cause against Hurckes, MAH Advising, and Ironclad Law. D65. Fisher explains that he is moving for that relief "to redress[] what the evidence suggests could be serious litigation misconduct" by Hurckes, MAH Advising, Ironclad Law, or all three of those defendants. D65 at 1. The motion is treated as unopposed under Local Rule 3.01(c) because Hurckes, MAH Advising, and Ironclad Law failed to respond to the motion, and the time to respond has passed.

According to the complaint, Fisher hired Hurckes to represent him, and through a loan obtained via a link that Hurckes texted him, paid MAH Advising a $3,000.00 retainer with the understanding that any unused amount would be refunded. D1 ¶¶17–24. Despite multiple requests for a written representation agreement, MAH Advising failed to provide one. D1 ¶26.

Hurckes did not regularly communicate with Fisher about the work done or hours billed, and Hurckes eventually conveyed that he had changed his mind about proceeding as originally planned. D1 ¶¶27, 31–32. After Fisher contacted a program run by The Florida Bar, MAH Advising billed him $4,137.50 under questionable circumstances, including billing for work on future days. D1 ¶¶38–45. When Fisher refused to pay the invoice, I.C. System attempted to collect the alleged debt in ways that failed to comply with legal requirements. D1 ¶¶53–57, 59–60. At some point, the invoice was not from MAH Advising but from Ironclad Law.[1] D1 ¶¶68–70.

Fisher's motion to strike papers and for the Court's consideration of an order to show cause against Hurckes, MAH Advising, and Ironclad Law, D65, is **granted** to this extent. The disclosure statements filed on March 9, 2025, D59, D60, are stricken because they are incomplete and unsigned. By **July 25, 2025**, Hurckes, MAH Advising, and Ironclad Law must each file a complete disclosure statement signed by a member of the Court's bar using the form required by Local Rule 3.03 and including each current and former member of MAH Advising and Ironclad Law. By the same deadline, Hurckes, MAH Advising, and Ironclad Law must show cause why sanctions, including default, should not be imposed against them under Fed. R. Civ. P. 4(d)(2), Fed. R. Civ. P. 11(c), Fed. R. Civ. P. 37(a)(5), 28 U.S.C. § 1927, the Court's inherent power, or a combination of those authorities based on the following conduct or alleged conduct:

---

[1] Ironclad Law LLC initially filed papers with the New York Department of State on August 26, 2024, and filed papers with the Florida Division of Corporations on May 14, 2025. *See* Sunbiz.org, "Search Records," "Ironclad Law LLC," https://dos.fl.gov/sunbiz/ (last visited June 25, 2025).

1. Filing papers purportedly signed by Ashanti Palmer, Esquire, without her knowledge or permission and using a non-existent Florida Bar Number in her signature block (Hurckes). *See* D57, D61, D65-1, D65-2, D65-3.

2. Refusing to waive service of process without apparent good cause, requiring Fisher to expend money for service of process. D19–D26.

3. Violating the case management and scheduling order, D36, as amended, D39, by failing to serve initial disclosures by January 13, 2025 (Hurckes and MAH Advising), D50, or failing to serve any initial disclosures at all (Ironclad Law).

4. Violating the order entered on February 6, 2025, D44, by failing to take the three actions required by the order, necessitating a show-cause hearing, D48.

5. Violating the order entered on February 27, 2025, D54, by failing to file a properly completed and signed disclosure statement (MAH Advising and Ironclad Law), D58, D60, or by failing to file any disclosure statement at all (Hurckes).

6. Violating the order entered on February 27, 2025, D54, by omitting from the declaration signed on March 9, 2025, factual representations made at the February 26, 2025, show-cause hearing. *Compare* D67 (transcript), *with* D58 (declaration).

7. Representing to the Court that Hurkes was on "family [and] medical leave" in January and February 2025, D51 ¶¶1, 7; D67 at 4, 6–7; and had returned to the office on February 24, 2025, to discover the February 6, 2025, order to show cause, D51 ¶3; without informing the Court about his continuing practice of law in more than a de minimis manner during those months, *see, e.g.*, D46-28 at 10 (emailing opposing counsel on January 27, 2025, "Are you filing your PI? I'm looking forward to the mountains of information we're going to disclose about your client to destroy your likelihood of success. Just waiting for your move. Show your cards. We will too."); D46-27 at 2–3 (emailing opposing counsel on January 21, 2025, including with a threat of attorney's fees against

Fisher and a request for opposing counsel's cellphone number to have reminders about Fisher's alleged debt sent directly to opposing counsel's cellphone); D59 in No. 2:24-cv-685-SPC-NPM (filing a notice of appeal on January 10, 2025); D10 in No. 2:24-cv-766-JES-KCD (moving for default judgment on January 6, 2025).

8.  Moving for an extension of time on December 31, 2024, due to Hurckes's "pre-scheduled vacation," D38 at 1, yet representing to the Court on February 26, 2025, that Hurckes "[h]ad some health issues late December/early January," causing an inability to handle cases, D67 at 18–19.

9.  Representing to the Court that the failure to timely serve initial disclosures was "due to a calendaring issue and a change of attorneys," D51 ¶¶1, 2, 7; D67 at 5; despite having represented to opposing counsel that the delay was caused by having to "wait[] for some documents," D42-1 at 2.

10. Representing to the Court in the declaration signed on March 9, 2025, that, due to "health issues," Hurckes is "withdrawing from all cases in which [he is] currently counsel of record, including this case, and transitioning [his] cases to other attorneys within Ironclad Law … and MAH Advising … to ensure continuity of representation," D58 at 1–2; but failing to transition this case to a lawyer admitted to practice in this Court, continuing to represent existing clients, and taking on new clients, *see, e.g.*, D65-4 at 68–72 (answering the complaint on behalf of a client on May 7, 2025); D65-4 at 35–67 (filing a nine-count "emergency" complaint in state court on behalf of Ironclad Law on May 5, 2025, against a former paralegal of Ironclad Law—April Hand—alleging the taking of information from the firm); D81 in No. 3:23-cv-1347-HES-LLL (entering an appearance for a client on April 22, 2025); D65-4 at 19–34 (filing a one-count complaint in state court on behalf of a client on April 15, 2025); D52 in No. 6:25-cv-1-CEM-RMN (moving for a continuance of an in-person hearing on March 4, 2025, because of an asserted state-court trial beginning on the same day; not moving to withdraw in the state case until June 20, 2025, and even then due only to undescribed "irreconcilable differences," D43 (2019-0332240-CA-01)); *see*

4

*also* D65-4 at 11–15 (moving for default in state court on behalf of MAH Advising on March 3, 2025); D65-4 at 1–10 (filing a six-count complaint in state court on behalf of a client on February 27, 2025).

11. Consistently violating rules and the district judge's standing order. *See* D9 (violating Local Rule 1.08 and the standing order); D10 (notifying Hurckes of the need to follow Local Rule 2.01(b)(2)(B) and directing him to update his contact information); D27 (violating the standing order); D28 (violating Fed. R. Civ. P. 7(a) and (13(a)); D38 (violating Local Rule 1.08 and the standing order); D40 (again notifying Hurckes of the need to follow Local Rule 2.01(b)(2)(B) and directing him to update his contact information); D50 (violating Fed. R. Civ. P. 5(d)(1)); D51 (violating Local Rule 1.08 and the standing order); D52 (notifying Hurckes of the need to follow Local Rule 2.02(a) and directing him to identify lead counsel); D58 (violating Local Rule 1.08 and the standing order); D59 (violating Fed. R. Civ. P. 11(a)); D60 (violating Fed. R. Civ. P. 11(a)); D62 (violating Local Rule 1.08, Local Rule 2.02(c), Local Rule 3.01(g)(2)–(3), and the standing order); *see also* D16 (directing counsel to the rules and the standing order and warning that sanctions may be imposed for violations); D36 (same).

The case management and scheduling order D36, as amended, D39, is **vacated**. The clerk is **directed** to terminate the pending motions, D27, D62, D64, and administratively close the case. Once a decision on sanctions has been made, the case will be re-opened, a new case management and scheduling order will enter, and, if warranted by the decision, the motions will be considered.

---

Under Local Rule 2.04, the Court refers Hurckes to the grievance committee for the Orlando Division to investigate alleged misconduct in this Court, described below, and provide the chief judge a recommended resolution.

The Court also refers Hurckes to The Florida Bar for any action considered appropriate in any current investigations involving Hurckes or otherwise.

Hurckes was admitted to the Florida Bar on November 23, 2022. *See* The Florida Bar, Member Profile, "Michael Alexander Hurckes," https://www.floridabar.org/directories/find-mbr/profile/?num=1040918 (last visited June 25, 2025). Hurckes was admitted to this Court's bar on January 3, 2023. *See* M.D. Fla., Directory of Members of the Court's Bar, "Hurckes, Michael Alexander," https://apps.flmd.uscourts.gov/attyadm/attyroll.htm (last visited June 25, 2025). Thus, Hurckes has been practicing law in Florida and in this Court for less than three years.[2]

The conduct described in this order excludes possible misconduct elsewhere, except to note that Hurckes was a defendant in a recent lawsuit by more than three dozen former clients of Hurckes and MAH Advising, alleging racketeering by Hurckes, MAH Advising, and others. *See* D4 in *Jernigan et al. v. Hurckes, MAH Advising, et al.*, No. 24-CA-007274 (Sept. 6, 2024, Fla. 13th Jud. Cir.) ("This action arises out of a sophisticated, carefully crafted, fraudulent scheme by a Florida attorney, Michael Alexander Hurckes, and his law firm, MAH Advising PLLC, to solicit and accept business in a wide variety of legal specialties, to commit clients to long-term loans in order to pay their retainer fees, and to bind their clients to nonrefundable retainer arrangements based on a series of false promises to provide legal services that are never rendered. In carrying out this scheme, Hurckes and MAH conducted a wide-ranging enterprise through which they systematically misled prospective

---

[2]Hurckes was admitted to the New York State Bar on January 14, 2022. *See* N.Y. Unified Ct. Sys., Att'y Online Servs. Search, "Michael Alexander Hurckes," https://iapps.courts.state.ny.us/attorneyservices/search?1 (last visited June 25, 2025).

clients about the size, skill, experience and expertise of the law firm, induced them to retain the firm, collected payments and then immediately thereafter avoided communications with their clients. As disgruntled clients called for updates and guidance, MAH methodically frustrated their ability to reach anybody, delayed talking to the clients over protracted periods of time, then misrepresented to clients that they were working on their cases, and they continued stringing them along in this manner until the frustrated clients terminated their relationships with MAH, thus forfeiting their retainers."). Hurckes, on behalf of the defendants, moved to dismiss the complaint. *See* D19 (No. 24-CA-007274) ("The genesis of this lawsuit stems not from malpractice but from a conspiracy between an ex-employee Sara Gabr and Plaintiffs' counsel Mark S. Guralnick. Sara Gabr ex-paralegal who worked for the firm for TWO weeks before being fired stole confidential client records and unlawfully contacted those clients on behalf of her unlicensed law firm. She convinced them—by telephone and other means—that MAH Advising was not performing any legal work on their behalf, a claim directly contradicted by the court records."); *see also* D65-4 at 62 (message by a different former paralegal in a lawsuit by Ironclad Law against that paralegal appearing to reference the racketeering lawsuit). The racketeering lawsuit was voluntarily dismissed earlier this month. *See* D20, D21 (No. 24-CA-007274).

### *Miller v. Dominguez*, No. 2:24-cv-685-SPC-NPM

The Court ordered Hurckes to show cause why he should not be sanctioned for failing to appear at the in-person evidentiary hearing to decide the custody of a child. D45 (Nov. 1, 2024). Hurckes blamed his absence on "an inadvertent calendaring oversight," resulting in his failure to receive

7

notification of the hearing through PACER. D46 (Nov. 1, 2024). Hurckes's client, however, had shown up for the hearing. D47 (Nov. 1, 2024).

After a rescheduled evidentiary hearing, D53 (Nov. 21, 2024), the Court ordered Hurckes's client to surrender custody of the child, D54 (Nov. 22, 2024). Hurckes filed a notice of appeal. D59 (Jan. 10, 2025). The Eleventh Circuit ultimately dismissed the appeal, explaining:

> [Hurckes] has failed to respond to a notice issued on February 4, 2025, advising him that this case would be dismissed within 14 days unless he filed a Civil Appeal Statement and a Transcript Order Form, *see* 11th Cir. R. 42-1(b), responded to the jurisdictional question that issued on February 11, 2025, or responded to this Court's order to show cause that issued on March 27, 2025. In the light of [Hurckes]'s continued inaction, this Court, on its own motion, dismisses this case for want of prosecution.

D66 (Apr. 25, 2025).

The Court ordered Hurckes to personally pay the opposing side's fees, costs, and expenses incurred in attending the originally scheduled evidentiary hearing and the Bench Bar Fund's expenses incurred in reserving two interpreters for the hearing. D58 (Dec. 19, 2024). Hurckes violated the order, *see* D65 (Mar. 27, 2025), prompting the Court to order him to certify that he paid the amounts due, D67 (May 1, 2025). Hurckes violated the order, prompting the Court to order him to show cause why he should not be further sanctioned, including by finding him in contempt and referring him to the Court's grievance committee. D68 (May 9, 2025).

Hurckes's check to the Bench Bar Fund bounced, prompting the Court to order him to certify that he paid and has sufficient funds for the payment. D72 (May 28, 2025). Hurckes violated the order, prompting the Court to schedule an in-person hearing. D73 (June 5, 2025). In a May 15, 2025, email to opposing

counsel, Hurckes states, "Hey sorry, I've been out of office. You didn't get your check? Let me check with our accounting department. @Sultan what's the status on this." D79 at 5 (June 13, 2025). Because the Court had not received a purportedly forthcoming check, the Court rescheduled the hearing to June 30, 2025. *See* D77 (June 9, 2025), D78 (June 13, 2025), D80 (June 15, 2025).

### *Castillo v. RPST Grp. Holdings, LLC*, No. 2:24-cv-766-JES-KCD

Hurckes filed a complaint on behalf of his client. D1 (Aug. 21, 2024). Hurckes failed to move for default on behalf of his client, prompting the Court to order his client to show cause why his client's claim should not be dismissed for failure to prosecute. D6 (Oct. 28, 2024). Hurckes moved for default on behalf of his client. D7 (Oct. 28, 2024). Hurckes failed to move for default judgment on behalf of his client, prompting the Court to again order his client to show cause why his client's claim should not be dismissed for failure to prosecute. D9 (Dec. 30, 2024). Hurckes moved for default judgment on behalf of his client. D10 (Jan. 6, 2025). The Court denied the motion, ruling that the alleged facts in the complaint failed to support a judgment on the claims and giving Hurckes's client an opportunity to amend the complaint. D11 at 4–10 (Jan. 22, 2025). Hurckes failed to amend the complaint on behalf of his client, prompting the Court to direct the clerk to close the file. D12 at 1 (Feb. 10, 2025).

### *Simpson v. Jacksonville Beach Police Dep't etc.*, No. 3:23-cv-64-MCR

Hurckes entered an appearance on behalf of the plaintiff. D40 (Sept. 7, 2023). Hurckes moved to withdraw, stating that his client was not paying him or co-counsel. D50 at 1 (Oct. 11, 2023). Hurckes violated the rules in multiple ways. D52 at 1–2 (Oct. 13, 2023). The action was dismissed without prejudice based on the plaintiff's notice of voluntary dismissal. D58 at 1 (Oct. 30, 2023).

<u>*Bennett v. Sheriff T.K. Waters et al.*</u>, No. 3:23-cv-1347-HES-LLL

Hurckes entered an appearance on behalf of the plaintiff. D81 (Apr. 22, 2025). Hurckes moved to withdraw on his own behalf and on behalf of Nickalaus Taylor, "formerly of [Ironclad Law]," based on unspecified "[i]rreconcilable differences." D92 at 1–2 (June 13, 2025). Hurckes's client, on her own behalf, objected to the motion to withdraw, stating:

> The undersigned Plaintiff objects to her attorneys' attempt to withdraw from representation at this critical stage of litigation. The motion to withdraw follows a troubling pattern of unethical conduct, abandonment, and unauthorized filings that have severely prejudiced the Plaintiff's position. Allowing withdrawal now, just weeks before key deadlines and scheduled depositions, would irreparably harm the Plaintiff and reward misconduct that violates the most basic tenets of attorney-client responsibility.

> …

> Plaintiff retained Ironclad Law PLLC for representation in this matter after a long period of litigating pro se.

> a. Attorneys assigned to the case filed a Fourth Amended Complaint and related motions without Plaintiff's knowledge, consent, or approval.

> b. Despite Plaintiff's repeated emails, phone calls, and portal messages requesting the re-filing of her original pro se motions that had been struck, counsel failed to act, even after the Court gave explicit permission to refile within 21 days.

> c. The attorneys filed only two motions over a two-month period, charged exorbitant fees, and failed to initiate any direct phone communication with the Plaintiff.

> d. Counsel also agreed to extend discovery and mediation without the Plaintiff's consent, undermining her litigation strategy and granting delays that benefited opposing counsel.

> e. The Plaintiff only learned that the firm had filed a motion to amend the complaint and other substantive filings when the docket reflected such filings; no meaningful explanation or consultation ever occurred.
>
> f. When Plaintiff began to protest the unauthorized filings and demanded accountability, counsel abruptly filed a motion to withdraw.

D93 at 1–2 (June 15, 2025).

The Court denied Hurckes's motion without prejudice for failure to comply with the rules. D96 (June 16, 2025). Taylor moved to withdraw, explaining that he is no longer employed by Ironclad Law. D97 at 1 (June 17, 2025). Hurckes's client again objected to the withdrawal. D101 (June 17, 2025). The Court granted Taylor's motion and permitted him to withdraw. D102 (June 23, 2025). The same day, Hurckes moved to withdraw a second time based on an unspecified "irreconcilable difference." D103 at 1 (June 23, 2025). The Court denied Hurckes's motion without prejudice for failure to comply with the rules. D104 (June 24, 2025). After the Court entered the order denying Hurckes's motion, Hurckes's client again objected to Hurckes's withdrawal, stating:

> Plaintiff strongly opposes Attorney Michael A. Hurckes' request to withdraw as counsel of record in the middle of this highly sensitive civil rights litigation, especially as it nears the end of discovery and the beginning of depositions. Mr. Hurckes' motion is misleading, inaccurate, and procedurally defective. The request reflects a larger pattern of unethical behavior, including neglect, misrepresentation, abandonment, and manipulation of the judicial process.
>
> Allowing withdrawal under these circumstances would reward misconduct and irreparably prejudice Plaintiff, who is not an attorney and who has been left alone to respond to complex legal filings, delayed timelines, and procedural traps deliberately created by her own attorneys.

a) Failure to Communicate and Intentional Abandonment: Plaintiff has never spoken to Attorney Hurckes or any attorney at Ironclad Law PLLC for over two months since they represented the Plaintiff. She made multiple attempts to communicate via email and the client portal but received no return calls or answers to specific legal questions. There were no phone calls, no meetings, and no explanations given to Plaintiff about the firm's litigation decisions or filings.

b) Unauthorized Filings and Misrepresentations: The Fourth Amended Complaint, discovery extensions, and all related motions were filed without Plaintiff's informed consent. Plaintiff never agreed to extend mediation or discovery and never saw the final pleadings before they were filed. These unilateral actions were taken without basic professional courtesy or ethical compliance.

c) Fabricated Notice and Misleading Content: Plaintiff was never given 14 days' notice of the motion to withdraw, as required under Local Rule 2.02(c)(1)(B)(i). She never consented to the withdrawal. In fact, she explicitly stated in writing that she did not consent. Yet, the motion falsely implies consent and cooperation, and Mr. Hurckes never made any legitimate effort to resolve issues or clarify intentions.

d) Attempted Concealment by Postal Filing: Rather than emailing a copy of the withdrawal motion as typically required for efficiency, Mr. Hurckes attempted to send it by postal mail, likely to delay Plaintiff's receipt of the motion and prevent her from filing a timely objection. As of this filing, Plaintiff has still not received the motion by mail.

e) Ongoing Misconduct and Exploitation: Despite no communication, the firm continues to bill Plaintiff weekly for legal services they did not perform. Their practice appears designed to accept retainers, produce minimal filings, and abandon clients under the guise of procedural compliance, leaving clients unrepresented and vulnerable.

f) Untruthful Representation to the Court: Mr. Hurckes' assertion that he "attempted to resolve" matters with Plaintiff is patently false. No such efforts were made, and no conversation or consultation took place. This amounts

> to a deliberate misrepresentation to the Court, undermining the integrity of this proceeding.

D105 at 1–3 (June 24, 2025).

The next day, Hurckes moved to withdraw a third time due to undescribed "[i]rreconcilable differences." D106 (June 25, 2025). The plaintiff again objected for reasons similar to those she previously provided. D107 (June 25, 2025). Hurckes remains counsel of record.

### Collins v. Kroger Fulfillment Network, LLC, No. 5:24-cv-313-MMH-PRL

Hurckes filed a complaint on behalf of the plaintiff. D3 (Jan. 10, 2024). Using the form for a lawyer to use to move to withdraw, *see* United States District Court for the Middle District of Florida, Forms, "Motion to Withdraw," https://view.officeapps.live.com/op/view.aspx?src=https%3A%2F%2Fwww.flm d.uscourts.gov%2Fsites%2Fflmd%2Ffiles%2Fforms%2Fflmd-motion-to-withdraw-dropdown-template.docx&wdOrigin=BROWSELINK (last visited June 25, 2025), Hurckes's client, on his own behalf, asked the Court to remove Hurckes as his lawyer, explaining:

> I asked for them to withdraw for many reasons. I was told they was going to file a dismissing on my case if [the defendant] didn't respond in time. My questions were why and I never got an answer. I didn't bother them until I need to. I went 3 to 4 months without hearing from. I was getting collection calls from a loan they took out in my name. [T]he circuit court all most dismissed my case because not action was taking on it as to serving [the defendant]. I'm working to obtain another attorney but its be hard at this point. No one wants to touch the case from what I've been told several times.

D10 at 1–2 (July 18, 2024) (typos in original). The Court denied the motion because the client, not Hurckes, had filed it. D11 at 1 (July 23, 2024).

The Court ordered the parties to show cause why the case should not be dismissed for lack of prosecution or sanctions imposed for failure to file the required case management report. D12 at 1–2 (Aug. 8, 2024). Hurckes moved to withdraw based on an undescribed "irreconcilable difference." D13 at 1 (Aug. 12, 2024). The defendant's counsel filed a unilateral case management report, explaining that he had tried to contact Hurckes to no avail and then received Hurckes's motion to withdraw. D15 (Aug. 20, 2024); D16 at 1–2 (Aug. 20, 2024). Hurckes failed to respond to the order to show cause, prompting the Court to defer ruling on his motion to withdraw. D17 at 1 (Aug. 22, 2024). The Court ultimately permitted Hurckes to withdraw. D19 at 1 (Sept. 11, 2024).

### _Young Turks LLC v. The Individuals etc._, No. 6:23-cv-1720-WWB-DCI

Hurckes filed a complaint on behalf of the plaintiff. D1 (Sept. 7, 2023). The Court denied a motion for default that Hurckes had filed on his client's behalf, D11 (Oct. 17, 2023), for failure to comply with the rules, D12 (Oct. 18, 2023). The Court denied a second motion for default that Hurckes had filed on his client's behalf, D13 (Oct. 19, 2024), for failure to show proper service of process, D14 (Oct. 20, 2023). Hurckes filed a third motion for default on his client's behalf, D15 (Oct. 25, 2023), prompting the Court to schedule a hearing on the motion, D16 (Oct. 25, 2023), presumably to talk to Hurckes directly about the problems with his motions. Hurckes failed to appear at the hearing; instead, a lawyer who was not counsel of record and not a current member of this Court's bar, Steven Meyer, tried to make a limited appearance. D17 (Oct. 31, 2023). The Court denied the motion for default and ordered Hurckes to show cause why he and his client should not be sanctioned for failing to appear at the hearing. D17 (Oct. 31, 2023). Hurckes responded by explaining that he had sent an "[a]ssociate" to cover the hearing because Hurckes is the managing

14

partner of MAH Advising and is managing more than "200 cases across the country." D20 at 1 (Nov. 20, 2023). After Hurckes failed to move for default judgment on his client's behalf, the Court ordered his client to move for default judgment and show cause why the case should not be dismissed for failure to prosecute. D27 at 1 (Jan. 23, 2024). Hurckes moved for default judgment on his client's behalf. D28 (Jan. 25, 2024). The Court denied the motion for failure to show proper service of process. D29 at 2–4 (Feb. 15, 2024).

Hurckes's client, through its member or manager, moved for an extension of time to serve process, explaining:

> Hello your honor,
>
> We hope you are doing well. This is Kerem Nefes from Young Turks LLC. Our lawyer has scammed us for the past 6 months of this case. We have been paying his bills for a long time but since there haven't been any updates and since he stopped responding to our texts about the case we stopped paying. We wanted to reach out to the court ourselves to get a[] time extension so we can find an actual lawyer who can help us. We found out online that if our lawyer doesn't show up today the case will be dismissed and our lawyer did not even let us know about this. Please let us know how we can proceed.

D30 at 1 (Mar. 7, 2024).

Hurckes's client provided asserted screenshots of text messages to show the absence of responses from Hurckes. D30 at 1; D30-1 (Mar. 7, 2024). The messages include this exchange with Hurckes or someone working with Hurckes, including, in order to obtain more attorney's fees, a false representation that the client had won the case:

[**Jan. 19, 2024**]

[**Client**:]

15

hey guys, hope you are doing well.

… I just see an "invoice" which I think is a mistake. as u know we already talked about it and u confirmed more than once that u won't charge us anymore money until we win the case.

so I just wanted to double check and let you know. thx.

[**Rutvi Brahmbhatt**:]

Hi, apologies for the inconvenience caused by the billing issue. Due to our transition to a new Accounting team, there was an error, and the bills were mistakenly sent to you. I want to assure you that the bills have been voided, and any reminders sent in error have been addressed. Additionally, the default Motion has been filed in the case. Thank you for your understanding, and we appreciate your patience during this transition. If you have any further concerns or questions, please feel free to ask.

[**Jan. 26, 2024**]

[**Client**:]

Thanks! … so what's the next step now? why does it take too long to get some results on our case …

[**Feb. 12, 2024**]

[**Client**]

following up here …

[**Hurckes**]

Hey guys, so the fault judgement is filed.

Unfortunately, the partners at the firm no longer allowing us to the further payment on these cases

So I can have one of my associates, call you walk-through in-house payment options, including financing to finish out the case

We had over $300,000 of uncollected bills last year so now everyone's required to have their bills paid in full plus a retainer

**[Client]**

hey …

don't get me wrong but we always believe in open/honest communication as you know.

We are tired of these unpredictable "new updates". This is what your co-worker said and confirmed only 2 weeks ago: [repeating Rutvi Brahmbhatt's text about the "transition to a new Accounting team" and the voiding of the invoices].

So; we already paid our very first bills as we promised. so as you can appreciate we always keep our promises.

then you promised that you won't charge us anything until we win the case; we'd pay you a percentage after winning our case since our hand is very "strong" in this case.

We expect you to keep your promise as well. But the only thing we see is you're detaining us. there is no "tangible" updates on our case for months even though it's a "strong" one.

If you aren't willing to keep your promise and focus on our case to win it, please just be honest and let us know so we can go from there and look for alternative options. …

**[Hurckes]**

Hey you have won your case, the motion to execute on it is filed.

The firm just is not allowing any deferred payments. My office can contact you to negotiate a payment plan if you like. Or withdraw from the case

**[Client]**

what do you mean "we won the case"?

17

did we seize his bank accounts?

did we get any money from him in return for what he's done to us?

because these all were your "pledges/commitments"

to be honest we are not even sure that guy knows that we sued him because "We" couldn't even properly serve him initially, as you remember

D30-1 (Mar. 7, 2024) (typos in original). The Court denied the motion without prejudice because an entity must be represented by counsel, and a party represented by counsel must appear only through counsel. D31 (Mar. 11, 2024). The next day, the Court dismissed the case for continued failure to show proper service of process. D32 at 1 (Mar. 12, 2024).

### *Hartford Ins. Co. of the SE v. All Am. Home Servs., LLC, etc.*, No. 6:25-cv-1-CEM-RMN

Palmer (or someone pretending to be Palmer), on behalf of a defendant, filed a "Motion for Enlargement of Time to Respond to Summons" (using Hurckes's PACER account). D19 (Feb. 10, 2025) (some capitalization omitted). The Court denied the motion for failure to comply with the rules. D20 (Feb. 11, 2025). The Court explained that the Federal Rules of Civil Procedure, not the Florida Rules of Civil Procedure, applied. D20 (Feb. 11, 2025). Neither Hurckes nor Palmer responded to the complaint on the client's behalf, resulting in a default entered against the client. D31 (Feb. 27, 2025). The Court ordered Hurckes to show cause why he "should not be sanctioned for failure to respond to Plaintiff's attempts to confer on motions and for failure to either withdraw from the case or continue adequate representation of his client" and ordered Hurckes and his client to appear for an in-person hearing on March 6, 2025. D35 at 1–2 (Feb. 27, 2025). Palmer (or someone pretending to be Palmer) filed

18

a notice of appearance on behalf of the client (using Hurckes's PACER account). D39 (Feb. 27, 2025).

Palmer (or someone pretending to be Palmer) filed a second "Motion for Enlargement of Time to Respond to Summons" (using Hurckes's PACER account), citing a Florida Rule of Civil Procedure and a non-existent Local Rule. D40 (Feb. 27, 2025) (some capitalization omitted). Palmer (or someone pretending to be Palmer) also filed a "Motion to Inform the Court of Service Error" (using Hurckes's PACER account). D41 (Feb. 27, 2025) (some capitalization omitted). Palmer (or someone pretending to be Palmer) represented:

> On February 10, 2025, the undersigned filed a Motion for Enlargement of Time in this matter seeking an extension of time to respond to the Plaintiff's Amended Complaint.
>
> …
>
> Due to an inadvertent error, the email address used to serve the Motion for Enlargement of Time was misspelled, causing the document to not be received by the intended recipient. Specifically, the email address Dale.Doubler@wilsonelser.com was used instead of the correct email address, dale.dobuler@wilsonelser.com. …
>
> …
>
> The undersigned respectfully requests that this Court take notice of the service error and consider the corrected service of the Motion for Enlargement of Time as valid. In the alternative, the undersigned respectfully requests that the Court extend any applicable deadlines to account for the delay caused by the misspelling of the email address.

D41 at 1–2 (Feb. 27, 2025).

The Court denied the motion, explaining,

> Defendant previously filed the exact same motion, which was denied for
> failure to comply with Local Rule 3.01(a). … The Court has already told
> Counsel to include a memorandum of law that cites the proper Federal
> Rules of Civil Procedure, not the Florida rules, and provides good cause.
> Defendant has been defaulted and counsel must first file a motion to set
> aside Clerk's Default before he may file a properly supported motion for
> extension of time …[.]

D44 (Mar. 3, 2025).

Palmer (or someone pretending to be Palmer), on behalf of the client, moved for a continuance of the hearing and to allow her to appear remotely, representing that she has a "prior medical obligation" and lives in Broward County and Hurckes "also has a prior obligation, as he will be in trial on the same date … and thus is also unable to attend" (using Hurckes's PACER account). D47 at 2 (Mar. 3, 2025). The clerk notified Palmer that she must be a member of the Court's bar to practice in the Court. D48 (Mar. 4, 2025). The Court denied the motion, explaining,

> The Order to Show Cause and the Show Cause hearing is directed at
> attorney Michael Hurckes. No other lawyer may respond to the Show
> Cause Order or appear at the hearing in his place. Should attorney
> Hurckes have extraordinary circumstances warranting rescheduling the
> hearing, he shall file a proper motion stating his reason and including
> support.

D49 (Mar. 4, 2025).

Hurckes, on behalf of the client, moved for a continuance, representing that he would be in trial on March 6, 2025 (the day of the hearing) in Miami Dade County, starting at 9:00 a.m., but that he could attend the hearing later in the day if allowed to attend remotely. D52 at 2 (Mar. 4, 2025) (citing No. 2019-033224-CA-01). The Court denied the motion and ordered Hurckes to

20

appear and show cause why he should not be sanctioned for an apparent violation of Fed. R. Civ. P. 11, explaining:

> This matter is before the Court on Defendant Jose Fernandini's Motion to Continue and Appear Remotely (Dkt. 52), filed on March 4, 2025. On February 10, 2025, Defendant Jose Fernandini appeared through counsel Michael Alexander Hurckes and filed a motion for extension of time to respond to the Complaint. Dkt. 19. The Motion was subsequently denied (Dkt. 20), and Defendant failed to file a renewed motion or timely respond to the Complaint. Because Defendant Fernandini failed to timely respond to the Complaint, the Clerk entered Clerk's Default against Defendant Jose Fernandini on February 27, 2025. Dkts. 31, 33.
>
> On the same day, I issued an Order to Show Cause as to attorney Michael Hurckes, setting a written response deadline of March 5, and an in-person hearing on March 6, 2025. *See* Dkt. 35. On March 3, another lawyer appeared and requested the hearing be rescheduled because she was not available on the scheduled hearing date and time. Dkt. 47. The Court denied the motion and explained that the Show Cause Order was directed at attorney Hurckes and only attorney Hurckes may respond to the Order and show up at the duly scheduled hearing. Dkt. 49. Thereafter, attorney Hurckes filed the instant Motion to Continue representing to the Court that he will be in trial on the date and time of the hearing in Miami Dade County for case No. 2019-033224-CA-01 and requested the hearing be rescheduled for a different date and time and that he be allowed to appear remotely. *See* Dkt. 52 at ¶ 3.
>
> Thereafter, the Court's staff spoke to the Judicial Assistant assigned to Judge Ariana Fajardo Orshan, the judge presiding over Case No. 2019-033224-CA-01. Despite attorney Hurckes' representations to the contrary, the Judicial Assistant ensured that attorney Hurckes will **not** be in front of the court in Miami Dade County on March 6, 2025. The Court expects attorney Hurckes to appear in Court, on time, as required. He shall be prepared to address his apparent misrepresentation to the Court and offer argument why he should not be sanctioned for his apparent violation of Federal Rule of Civil Procedure 11.
>
> Accordingly, it is ORDERED that Defendant's Motion to Continue and to Appear Remotely (Dkt. 52) is DENIED. Attorney Michael Hurckes and his client shall comply with all directives in the Court's previous Show Cause Order (Dkt. 35) and the Notice setting the Show Cause Hearing (Dkt. 36).

D54 at 1–3 (Mar. 5, 2025).

Later that day, Hurckes moved to withdraw as counsel due to "health issues." D55 at 1 (Mar. 5, 2025). Hurckes represented,

> Due to the ongoing health issues, the undersigned has been working diligently to withdraw from other cases in which he is currently representing clients. However, despite these efforts the undersigned is still on call for an upcoming trial in Case No. 2019-033224-CA-01 that he must be present in Miami Dade County at 9:00 am, which further complicates the undersigned's ability to devote necessary attention and time to the present case. Attached hereto and marked as "Exhibit A" is the Order showing on call trial status.

D55 at 3 (Mar. 5, 2025). The Court denied the motion because of the pending order to show cause and for violating the rules. D56 (Mar. 5, 2025).

Hurckes re-filed a motion but titled it "Response to Order to Show Cause" and "First Amended Response to Order to Show Cause." *Compare* D57 *and* D58 *with* D41 (some capitalization omitted).

At the hearing, the Court began by stating that Hurckes's behavior was "particularly troubling to the Court." D62 (Mar. 6, 2025) (restricted audio; a transcript can be obtained from a court reporter). Hurckes represented that he is familiar with the Local Rules but his "main practice is in state court." D62 (Mar. 6, 2025). Hurckes stated that he had not moved to set aside the default because he had been busy during the short period between the entry of default and the hearing. D62 (Mar. 6, 2025). Hurckes asked for a deadline of March 12, 2025, to move to set aside the default. D62 (Mar. 6, 2025). Hurckes represented that he had been informed that Palmer is now a member of the Court's Bar. D62 (Mar. 6, 2025) (She is not.) Hurckes stated that he is winding down his practice due to health issues. D62 (Mar. 6, 2025). The Court found that Hurckes had misrepresented his need to be in state court during the

22

hearing. D62 (Mar. 6, 2025). The Court further found that Hurckes had not well represented his client and had unnecessarily caused the expenditure of resources. D62 (Mar. 6, 2025).

The day after the deadline to move to set aside default, Palmer (or someone pretending to be Palmer) moved to set aside default (using Hurckes's PACER account). D64 (Mar. 13, 2025). The Court denied the motion for failure to follow the rules and cite federal law. D66 (Mar. 13, 2025). Hurckes moved to withdraw due to "significant health issues." D70 at 1 (Mar. 24, 2025). The Court denied the motion for failure to comply with a Local Rule. D71 (Mar. 24, 2025). On the same day, the Court dismissed the case based on a notice of voluntary dismissal. D72 at 1 (Mar. 24, 2025).

### *Lead Creation Inc. v. The P'ships & Unincorporated Assocs. Identified On Schedule A*, No. 8:23-cv-49-CEH-CPT

Hurckes filed a complaint on behalf of the plaintiff (a company for which Hurckes is the "Director") against twenty defendants. D1; D1-2 (Jan. 6, 2023). Hurckes later filed a notice of voluntary dismissal, D45 (Mar. 10, 2023), and moved to withdraw due to unspecified "fundamental ethical and good faith disagreements" between him and "the Client," D46 at 1 (Mar. 10, 2023). Based on the notice, the Court dismissed the case. D47 (Mar. 10, 2023). Counsel for some defendants submitted documents filed in a case in the Southern District of New York involving the same allegations and claims but different defendants. D52 (Mar. 17, 2023); *see Lead Creation Inc. v. The P'ships & Unincorporated Assocs. identified On Schedule A etc.*, No. 1:22-cv-10377 (Dec. 8, 2022, S.D.N.Y.). The documents, including a court order, call into question Hurckes's conduct and representations. D52-1 to D52-5 (Mar. 17, 2025). The Court scheduled a hearing on the motion to withdraw. D54 (Mar. 21, 2025).

Counsel for some defendants submitted additional documents from the other case, further calling into question Hurckes's conduct and representations. D55; D55-1 to D55-9 (Mar. 31, 2023). Hurckes filed a notice of voluntary dismissal. D56 (Apr. 6, 2023). The Court permitted Hurckes to withdraw. D60 (Apr. 14, 2023). In a pending motion, the defendants allege fraud and concealment in the filing of the lawsuit. D80 (Sept. 7, 2024), D81 (Sept. 9, 2025), D82 (Sept. 10, 2024).

### *MAH Advising, PLLC v. M&T Bank Corp. etc.*, No. 8:24-cv-363-SDM-AAS

Hurckes filed a complaint on behalf of MAH Advising against MAH Advising's bank and two bank employees, alleging that they wrongfully converted and restricted MAH Advising's client "trust funds to cover an alleged chargeback dispute." D1 at 1–2 (Feb. 7, 2024). An exhibit to the complaint indicates that the bank imposed an account restriction because of "large merchant chargebacks or disputes of transactions" requiring MAH Advising's attention. D1-5 at 2–3 (Feb. 7, 2024). The defendants moved to dismiss. D20 (Mar. 22, 2024); D21 (Mar. 27, 2024). The Court scheduled a hearing on a motion for a preliminary injunction and ordered MAH Advising to file witness and exhibit lists by a certain day. D18 at 1 (Mar. 7, 2024). Hurckes, on behalf of MAH Advising, did not respond to the motions to dismiss and violated the order, D26 (Apr. 19, 2024). The Court therefore granted the motions to dismiss. D27 at 1 (Apr. 23, 2024).

### *Franklin v. Wells Fargo Bank, N.A., etc.*, No. 8:24-cv-520-MSS-AAS

Hurckes filed a complaint on behalf of the plaintiff against three entities and a "John Doe." D1 (Feb. 28, 2024). Each of the three entities moved to dismiss or to compel arbitration. D19 (Apr. 18, 2024), D23 (May 3, 2024), D32

24

(June 3, 2024). Hurckes, on behalf of his client, failed to respond to any of the motions, prompting the Court to order his client to show cause why the motions should not be granted. D34 at 1–2 (July 16, 2024). Hurckes moved for more time to respond to the order to show cause. D35 at 1 (July 29, 2024). The Court denied the motion, explaining:

> Plaintiff's responses to the various Motions to Dismiss and/or Compel Arbitration are already long past due. The Court, as a courtesy, offered Plaintiff an additional fourteen (14) days to provide an explanation for the delays. A request filed the day before the Court's deadline claiming that counsel has "other equally important matters that require attention" is unacceptable. Plaintiff also failed to confer with opposing counsel concerning the relief he was seeking--the twenty-day extension of time. See Rule 3.01(g) of the Local Rules of the United States District Court for the Middle District of Florida. The motion is due to be stricken for that reason alone. The Court also notes that this dilatory conduct is consistent with the behavior counsel exhibited toward opposing counsel in their efforts to seek to confer on the Motions to Dismiss and/or to Compel Arbitration. At this point, if no response is filed in the time allotted, the Court will consider the motions on the merits without the benefit of a response.

D36 (July 30, 2024). Hurckes responded to part of one defendant's motion. D37 (July 30, 2024); D40 at 1–2 (Aug. 2, 2024). The Court granted the motions and gave Hurckes's client fourteen days to file an amended complaint against only that defendant and only on those claims and warned Hurckes "that if he attempts to file an amended complaint without a fair basis in fact or law, he may be subjected to sanctions pursuant to Fed. R. Civ. P. 11." D40 at 3 (Aug. 2, 2024). Hurckes, on behalf of his client, filed an amended complaint. D41 (Aug. 16, 2024). The defendant moved to dismiss. D42 (Aug. 29, 2024). Hurckes failed to respond to the motion on behalf of his client.

The Court ordered Hurckes to show cause why he should not be referred to a Court grievance committee or The Florida Bar, explaining:

25

> This matter comes before the Court *sua sponte*. Counsel for Plaintiff, Michael Alexander Hurckes, has appeared in a number of cases in this jurisdiction. <u>See</u> Case Nos. 3:23-cv-64-MCR; 5:23-cv-368-JSM-PRL; 6:23-cv-1720-WWB-DCI; 8:23-cv-2-TPB-AAS; 8:23-cv-49-CEH-CPT; 5:24-cv-313-MMH-PRL; 8:24-cv-363-SDM-AAS; and 8:24-cv-520-MSS-AAS. Almost without fail, counsel has not performed to the standard of practice demanded of lawyers at this Bar. Counsel has missed deadlines, failed to appear at hearings, and failed to consistently communicate with his clients. <u>See e.g.</u>, Case Nos. 6:23-cv-1720-WWB-DCI, ECF No. 17; 8:23-cv-2-TPB-AAS, ECF Nos. 70, 72, 97; 8:24-cv-363-SDM-AAS, ECF Nos. 26, 27; and 8:24-cv-520-MSS-AAS, ECF No. 34.
>
> This level of performance puts clients' cases at risk. In one case, counsel Hurckes' clients felt the need to reach out directly to the court to preserve their rights. <u>See e.g.</u>, 6:23-cv-1720-WWB-DCI, ECF No. 30 ("We wanted to reach out to the court ourselves to get an extension [of time] so we can find an actual lawyer who can help us. We found out online that if our lawyer doesn't show up today the case will be dismissed and our lawyer did not even let us know about this."). Counsel is required to review his conduct in all of these cases, provide comprehensive explanations to the Court as to each, and SHOW CAUSE, within FOURTEEN (14) days of the date of this Order, why he should not be referred to the Middle District of Florida Grievance Committee or the Florida Bar.

D43 at 1–2 (Sept. 4, 2024). Hurckes responded, contending that he "has not willfully or repeatedly failed to uphold the standard of practice demanded of lawyers" and asked the Court to "rest[] assured no misconduct has occurred." D44 at 1 (Sept. 18, 2024). He represented that he had not responded to the motions "due to client's failure to provide an explanation or documents to refute the allegations in the motions" and "there may have been matters which were initially relayed differently by the client." D44 at 10 (Sept. 18, 2024). He represented that rather than spending money to respond to the motions to dismiss, he "planned to replead the complaint and not waste clients fees." D44 at 10 (Sept. 18, 2024). The Court granted the motion to dismiss and dismissed the action with prejudice, explaining,

While Plaintiff's counsel responded to the Court's Show Cause Order with various explanations and excuses for his prior conduct and missteps in this jurisdiction, counsel has once again failed to discharge his responsibility to his client and to the Court by failing to respond to the Motion to Dismiss filed by Defendant Wells Fargo. The deadline to do so has long since passed.

Moreover, even a cursory review of the amended complaint reveals that it fails to cure the previously identified deficiencies and, as explained in the Motion to Dismiss, it introduces additional defects.

Accordingly, Defendant Wells Fargo's Motion to Dismiss, (Dkt. 42), is GRANTED. Counsel's flagrant failure to comply with the Court's rules, the failure to file timely a timely response, and the failure to remedy the identified deficiencies, especially after being issued a Show Cause Order, warrants dismissal of the Amended Complaint WITH PREJUDICE.

D45 at 2 (Feb. 18, 2025).

### *Advanced Care Pediatrics of Fla., LLC v. DPS PR Realty, Inc.*, 8:25-cv-653-KKM-CPT

Hurckes answered the complaint on behalf of the defendant. D28 (May 7, 2025); *see also* D65-4 at 68–72 in this action (May 23, 2025). The Court ordered Hurckes's client to file a certificate of interested persons as required by the rules. D29 (May 7, 2025). Hurckes did not file one on behalf of his client despite the sua sponte extension of time, prompting the Court to order the client to show cause why sanctions should not be imposed or to file the certificate. D30 (May 13, 2025). Nickalaus Taylor of Ironclad Law filed a certificate on behalf of the client. D31 (May 14, 2025). The Court explained that the certificate fails to satisfy the standards and ordered the client to show cause why it should not be sanctioned for failure to follow orders or file a proper certificate. D33 (May 14, 2025). Taylor filed another certificate on behalf of the client. D35 (May 14, 2025).

This week, Taylor moved to withdraw, explaining that he is no longer employed by Ironclad Law. D39 at 1 (June 24, 2025). Taylor represents, "In accordance with Local Rule 3.01(g), the undersigned has conferred with counsel for the other parties and there is no objection to this motion." D39 at 1 (June 24, 2025). The opposing side responded in opposition to the motion, stating:

> 1. On June 24, 2025, Defendant filed for lead counsel Nickalaus Taylor to Withdraw as Counsel. [Doc. No. 30].
>
> 2. Therein, Defendant claims that it has conferred with Plaintiff's counsel and that the Motion is unopposed. [Doc. No. 30 ¶ 5]. But Defendant has never conferred with Plaintiff's counsel regarding the requested relief.
>
> 3. This is concerning because Defendant did the same thing with its Motion for Extension to Respond to Complaint. It never conferred with Plaintiff's counsel but claimed to have done so.
>
> 4. Plaintiff had to file a Response in Opposition advising the Court that Defendant never, in fact, conferred with Plaintiff's counsel and that Plaintiff was concerned that this was a delay tactic because this was the second counsel that said they were representing Defendant but then used it as a delay tactic and was not actually licensed to practice in the Middle District of Florida. [See, Doc. 21].
>
> 5. Plaintiff is concerned that this is another delay tactic. Especially because Defendant has filed its Answer and Affirmative Defenses that include defenses that are wholly untrue and should be sanctionable.
>
> 6. For instance, Defendant claims that Plaintiff has occupied the premises and therefore should not be responsible to refund rents paid. [See, Doc. 28]. But Plaintiff has never occupied the premises because Defendant never delivered it.
>
> 7. Plaintiff respectfully requests that the Court enter an Order providing a specific deadline for Defendant to find new counsel and that Defendant be prohibited from delaying the scheduling Order.
>
> 8. Moreover, Plaintiff requests that the Court prohibit Defendant's counsel from withdrawing until it has conferred with Plaintiff's counsel.

28

WHEREFORE, Plaintiff requests that counsel for Defendant be prohibited for at least thirty days from withdrawing until after Defendant's counsel meets and confers with Plaintiff's counsel, pursuant to 3.01(g), which will provide enough time to move for Rule 11 sanctions if necessary for maintaining frivolous defenses.

D40 at 1–2 (June 25, 2025). The motion, D39, is pending.

### _Fisher v. MAH Advising, PLLC etc._, No. 6:24-cv-1766-WWB-NWH (this action)

Hurckes entered an appearance on behalf of himself, MAH Advising, and Ironclad Law. D9 (Oct. 3, 2024). Hurckes, on behalf of himself, MAH Advising, and Ironclad Law, moved to dismiss, D27 (Nov. 19, 2024), and, on behalf of himself and MAH Advising, filed counterclaims against the plaintiff, D28 (Nov. 19, 2024). The Court struck the counterclaims sua sponte because they were not included in an answer. D34 at 1–2 (Dec. 3, 2024).

The Court established a deadline of December 30, 2024, to serve mandatory initial disclosures. D36 at 1 (Dec. 23, 2024). The day after the deadline, Hurckes, on behalf of himself, MAH Advising, and Ironclad Law, moved for two additional weeks due to a "pre-scheduled vacation." D38 at 1 (Dec. 31, 2024). The Court granted the motion and established a new deadline of January 13, 2025. D39 (Dec. 31, 2025).

The day after the deadline, on January 14, 2025, opposing counsel emailed Hurckes, explaining that he had not received the initial disclosures and asking when he could expect them or when Hurckes would be available for a conference. D42-1 at 2 (Jan. 17, 2025). The next day, on January 15, 2025, Hurckes emailed, "Sorry …, will get them today, waiting for some documents." D42-1 at 2 (Jan. 17, 2025). Two days later, on January 17, 2025, Fisher moved to compel service of the initial disclosures, explaining they still had not been

served. D42 (Jan. 17, 2025). Hurckes, MAH Advising, and Ironclad Law did not respond to the motion. The Court therefore construed the motion as unopposed, granted it, and ordered Hurckes, MAH Advising, and Ironclad Law to take three actions by February 12, 2025: (1) serve their initial disclosures; (2) explain why they failed to comply with the case management and scheduling order, D36, as amended, D39; and (3) show cause why sanctions should not be imposed under Fed. R. Civ. P. 37(c). D44 (Feb. 6, 2023).

Hurckes, MAH Advising, and Ironclad Law took none of the three actions, *see* D47 (Feb. 13, 2025), prompting the Court to schedule a show-cause hearing by telephone for February 26, 2025, and ordering Hurckes to show cause why sanctions should not be imposed against him, MAH Advising, and Ironclad Law for failure to follow orders, D48 at 1 (Feb. 14, 2025).

Two days before the hearing, on February 24, 2025, Hurckes filed initial disclosures only by him and MAH Advising. D50 (Feb. 24, 2025). Hurckes declared under penalty of perjury that he had served the initial disclosures on October 3, 2025. D50 at 5.

The morning of the hearing, on February 26, 2025, Hurckes responded in writing, representing:

> 1. Attorney Michael Hurckes took Family/ medical leave in January/ February of 2025. As a result, another attorney at the firm initially took over the case. However, due to unforeseen circumstances, that attorney subsequently left the firm, necessitating a further transition of representation.

> 2. Due to this translation a calendaring error consulting excusable neglect left our initial disclosures drafted but unfiled.

> 3. When Attorney Hurckes came back on February 24th he was made aware of the lack of filing and the order to show cause.

30

4. It was immediately fixed and another new attorney at the firm will be taking over the case and is pending their admission to the Middle District of Florida.

5. Furthermore, it does not look like this matter will be settled and Attorney Hurckes will likely be a necessary witness in this matter. Pursuant to Florida Bar Rule 4-3.7, an attorney is prohibited from acting as an advocate in a trial if they are likely to be a necessary witness for their client. Given this ethical obligation, Attorney Hurckes cannot serve as counsel in the trial proceedings.

6. Despite these transitions, no substantial deadlines have been missed. All reasonable steps have been taken to ensure compliance with the Court's orders and scheduling requirements.

7. The delay in transition of counsel was due to excusable neglect due to family medical leave and another attorney's departure and administrative processing.

8. Any delay in the transition of counsel resulted from unforeseen circumstances, including the prior attorney's departure and administrative processing. These issues constitute excusable neglect under applicable legal standards, as they were not willful and did not result in prejudice to any party.

9. Efforts have been made to resolve the matter promptly and ensure continued representation without undue delay.

We are actively working to finalize the transition of representation and remain available to provide any further clarification the Court may require.

D51 at 1–2 (Feb. 26, 2025) (typos in original).

At the hearing, Hurckes represented:

I've been on family leave, family leave for a medical issue. Another attorney at our firm was supposed to take this over, and subsequently he left before the filing was supposed to be done. It was drafted. It was just never filed.

We then -- when I got back into the office, you know, went through all my emails, I realized that this had been dropped. I submitted -- it was

just the initial -- it was just the initial disclosures, Your Honor, and so I submitted that, and then I also gave a response this morning.

But other than this -- but other than initial disclosures, everything has been up to date. I have been trying to respond to emails, but I did not see that this filing was ever made in the record until I got back.

There's also -- another sort of issue is that we're -- one of our associates is going to be taking this case on because I don't think ethically I can represent this case, given that I'll probably be a necessary witness. And so we've been trying to facilitate that, and the initial process has been a little slow.

We've been following up with the clerk and trying to get her on the case as soon as possible. But between that and getting the new associate up to speed on the case, that's why the filing deadline was missed. I apologize for any delays. …

So we constitute [sic] this as excusable neglect due to a calendaring issue and a change of attorneys. And if this was, you know, tomorrow, the notice with regard to the new attorney would already be in.

But, Your Honor, between the Family and Medical Leave Act and between -- and between the switching of attorneys, twice actually now, who were supposed to take over this case, we believe that the -- the delay was, you know, not in bad faith and that the delay was actually, you know, minimal given that we got everything in. And that -- and then also during that time, you know, plaintiff's counsel brought a TRO, which was also time, we submit, that also took us away from, you know, that as well.

And so between all of that, we respectfully argue that it's excusable neglect. There's no harm on any party other than -- other than plaintiff's counsel, you know, filing -- filing a short motion. So between that, we respectfully request this Court not to impose sanctions given it is excusable neglect and given the circumstances of, you know, switching attorneys.

D67 at 4–6 (hearing conducted Feb. 26, 2025; transcript filed June 17, 2025). The Court asked Hurckes when he had gone on leave. D67 at 6 (hearing conducted Feb. 26, 2025; transcript filed June 17, 2025). Hurckes answered, "January. I just got back this -- this Monday [February 24, 2025] when I saw

all this. That's why it was filed this Monday. One of our other associates was supposed to have this filed, and apparently it was drafted but it was never filed." D67 at 6 (hearing conducted Feb. 26, 2025; transcript filed June 17, 2025). The Court asked Hurckes for the name of the lawyer who was supposed to have taken over, and Hurckes answered Ivan Daphines. D67 at 7 (hearing conducted Feb. 26, 2025; transcript filed June 17, 2025). (No lawyer named "Ivan Daphines" is on The Florida Bar's website, www.floridabar.org, or the Court's directory of lawyers admitted to practice here, https://apps.flmd.uscourts.gov/attyadm/attyroll.htm (last visited June 25, 2025).) The Court asked Hurckes when Daphines had left Ironclad Law, and Hurckes answered, "mid January, end of December, approximately." D67 at 7 (hearing conducted Feb. 26, 2025; transcript filed June 17, 2025). The Court questioned that answer, and Hurckes said, "Sorry. Sorry. Mid January to end of January." D67 at 7 (hearing conducted Feb. 26, 2025; transcript filed June 17, 2025). The Court asked Hurckes to elaborate on the "calendaring issue," and this colloquy occurred:

> MR. HURCKES: Yes. So the firm assigns tasks, right? So I assigned the task -- or my -- I assigned the task of this to be drafted. It -- it was drafted apparently, but it -- because he left, he never got the opportunity to file -- to file it. And so --
>
> THE COURT: When you say "it" --
>
> MR. HURCKES: -- between those two --
>
> THE COURT: Sorry to interrupt you.
>
> When you say "it" and 'it' was drafted, what are you talking about? Are you talking about the initial disclosures themselves or a response to the order to show cause or both?
>
> MR. HURCKES: The -- the initial disclosures. The -- the initial disclosures were drafted, and then I believe he just let this case go before -- before he left. I believe the order to show cause -- I think it was, you

33

know, late January or, you know, early February when that was issued and just -- it was because of the transition from one attorney of about 80 cases to another, it just got lost in the -- in the transition. As soon as I got back, I -- I fixed it.

THE COURT: You were on leave. An associate was supposed -- or someone was supposed to be working on the case. That person left, and this case just was left orphaned until you got back? Is that what happened?

MR. HURCKES: Effectively. It was supposed to be filed. The draft was in our case management system, and it just was never filed because of him leaving and then because of the -- of the transition.

The new associate, the associate taking over these cases, she's not admitted yet in the Middle District. That's still pending. And so that was the -- that was the -- that was the -- problematic, all right? She couldn't file it. She wasn't admitted, and so were pending her admission.

THE COURT: She's different from Ivan Daphines, who --

MR. HURCKES: Yes.

THE COURT: -- you described earlier.

MR. HURCKES: Yes.

THE COURT: But why --

MR. HURCKES: Yes. Ivan Daphines is not --

THE COURT: You've known all along that there's a conflict of interest under the Florida Bar rules, yet this is now becoming apparent to you?

MR. HURCKES: So the -- so the Florida Bar rules spec- -- specify that it's at trial. If there's something quick we can do to get rid of this, then we would try before bringing in the -- before bringing in another associate, you know, for basically an expense cost, right?

And so -- and so we were trying to see if there was anything that -- the allegations are just completely frivolous, Your Honor.

And so this is not going to be one that's going to settle, and so -- so because it's not -- it wasn't at trial, we were comfortable for that point.

34

> Now that it's not going to settle, we're now moving to bring -- to bring
> another attorney on this.

D67 at 7–10 (hearing conducted Feb. 26, 2025; transcript filed June 17, 2025).

Opposing counsel responded, "Mr. Hurckes's response this morning is
the first that we've heard about this family or medical leave that he's taken,
and I just have to express my serious concerns about whether -- the
truthfulness of that." D67 at 10 (hearing conducted Feb. 26, 2025; transcript
filed June 17, 2025). Opposing counsel observed that he and Hurckes had
exchanged emails on January 15 and 21, 2025, that he and Hurckes had
coordinated the scheduling of mediation on January 27, 2025, and that
Hurckes had emailed him on February 18, 2025, about the case. D67 at 11
(hearing conducted Feb. 26, 2025; transcript filed June 17, 2025). Opposing
counsel explained that he had not heard Daphines's name before and observed
that Hurckes had not mentioned Daphines in the response to the order to show
cause. D67 at 12 (hearing conducted Feb. 26, 2025; transcript filed June 17,
2025). Opposing counsel observed that Ironclad Law had not served initial
disclosures and that Hurckes had falsely stated he had served the initial
disclosures in October 2024. D67 at 12 (hearing conducted Feb. 26, 2025;
transcript filed June 17, 2025). Opposing counsel observed that Hurckes, MAH
Advising, and Ironclad Law still had not filed their certificates of interested
persons. D67 at 12–13 (hearing conducted Feb. 26, 2025; transcript filed June
17, 2025). Hurckes responded:

> I have not been completely off my email. What happened on January
> 15th was I had forwarded it to the associate in question and I'd asked
> him that these needed to get filed, and then subsequently they were
> never filed.

> That's -- that's effectively what happened. They were supposed to be filed, and they weren't very complicated. They just never were, and then he left shortly after.
>
> And then -- and then -- and then I have been somewhat monitoring my email, but I -- my assistant generally has been responding to a lot of these things through our daily catch-ups on the respondents', you know, requests, you know, etc.
>
> And it's not the only case that I've -- so I've had to withdraw from other cases, and we've started that transition, because I am -- I am, you know, not -- not taking on a full caseload at the moment, which is the need -- another need for the other attorney to step in.

D67 at 15 (hearing conducted Feb. 26, 2025; transcript filed June 17, 2025).

The Court asked Hurckes why he had not filed a certificate of interested persons. D67 at 15–16 (hearing conducted Feb. 26, 2025; transcript filed June 17, 2025). He answered that he "honestly, frankly, didn't need -- didn't know we needed one, but I will get that filed." D67 at 16 (hearing conducted Feb. 26, 2025; transcript filed June 17, 2025). Hurckes also answered, "I believe we didn't file it because -- I don't have a great reason, but I just don't think there are any interested parties. But we'll get that filed. I -- I must have missed it in my checklist." D67 at 16 (hearing conducted Feb. 26, 2025; transcript filed June 17, 2025). The Court observed that members of Ironclad Law would be interested persons, and Hurckes responded that he was the only member. D67 at 16–17 (hearing conducted Feb. 26, 2025; transcript filed June 17, 2025). The Court asked Hurckes why he was violating the standing order, and Hurckes denied having violated the standing order. D67 at 17 (hearing conducted Feb. 26, 2025; transcript filed June 17, 2025). Hurckes went on to say,

> Like I said, I've been having some health issues, and so I have not been on this case, and it was supposed to be taken over by someone else.

36

It was unintentional willful [verbatim] noncompliance. I have -- and I'm
actually leaving the practice of law full-time, and so I do need my
associates to go handle some of these cases. And that's another reason
that we've had significant onboarding of associates, because I am -- I am
transitioning off my caseload due to some health issues.

And so respectfully, Your Honor, I haven't been on this case for some
time. There is someone else who was supposed to -- was supposed to
onboard on this case, and it just never happened. And now we're just
waiting for the new person to get admitted.

D67 at 18 (hearing conducted Feb. 26, 2025; transcript filed June 17, 2025).
Asked about having drafted the motion to dismiss, Hurckes answered, "And
that was -- and that was -- and that was, I believe, back in November or early
fall, right? So I was practicing at that point. Had some health issues late
December/early January, and I decided to -- to -- for -- other attorneys are
picking up this caseload as we speak." D67 at 18–19 (hearing conducted Feb.
26, 2025; transcript filed June 17, 2025).

Opposing counsel responded that the articles of organization of Ironclad
Law show that Kiana Luscher is a member of Ironclad Law and that Hurckes
is not described as a member. D67 at 19–20 (hearing conducted Feb. 26, 2025;
transcript filed June 17, 2025). Hurckes replied that Luscher "transitioned off
of the ownership" in November and "she frankly doesn't want to practice law
either[.]" D67 at 20 (hearing conducted Feb. 26, 2025; transcript filed June 17,
2025).

The Court took the order to show cause under advisement and ordered
Hurckes, MAH Advising, and Ironclad Law to take three actions by March 7,
2025:

(1) [MAH Advising, Ironclad Law, and Hurckes] must file a disclosure
statement as required by Local Rule 3.03. The required form is in the
"forms" section of the Court's website, www.flmd.uscourts.gov/forms/all.

Through question 3, the Court is trying to determine everyone not disclosed earlier in the form who is or may be interested in the outcome of the action (including, for example, each member of the PLLC and LLC) to enable the Court to determine if recusal is necessary.

(2) MAH Advising, Ironclad Law, and Hurckes must file a notice indicating who will be representing them in this action. The lawyer representing them must enter an appearance. If Hurckes is withdrawing as counsel, he must move to withdraw in accordance with Local Rule 2.02(c).

(3) Hurckes must file an affidavit or declaration under penalty of perjury explaining the facts stated at the February 26 hearing and any other facts pertinent to the order to show cause.

D54 at 1–2 (Feb. 27, 2025).

The next day, on February 28, 2025, Palmer, then of Ironclad Law, entered an appearance on behalf of Hurckes, MAH Advising, and Ironclad Law. D55 (Feb. 28, 2025). On March 3, 2025, the clerk notified her that Local Rule 2.01(a) requires membership in the Court's bar or special admission. D56 (Mar. 3, 2025). On March 5, 2025, Palmer informed opposing counsel that she was no longer assigned to the litigation and that she expected another lawyer to file a substitution of counsel. D65 at 3 (May 23, 2025).

The March 7, 2025, deadline to take the three actions specified in the February 27, 2025, order came and went without the filing of disclosure statements or an affidavit or declaration.

On March 9, 2025, Palmer of Ironclad Law (or someone pretending to be Palmer) responded to the February 27, 2025, order on behalf of Hurckes, MAH Advising, and Ironclad Law (using Hurckes's PACER account):

1. In compliance with Local Rule 3.03, a disclosure statement is being filed contemporaneously with this response, identifying all persons and entities who may have an interest in the outcome of this case.

38

2. Due to serious and ongoing health issues, Mr. Hurckes is withdrawing from all cases in which he is currently counsel of record, including this matter. As such, his cases are being transitioned to other attorneys within his firm. A Motion to Withdraw has been filed in accordance with Local Rule 2.02(c).

3. Mr. Hurckes acknowledges that the response to the Court's Order to Show Cause was due on March 7, 2025. However, due to his ongoing health issues, he was unable to complete and file the required response by the deadline. Mr. Hurckes sincerely apologizes for this delay and respectfully requests the Court's understanding in light of his circumstances.

D57 at 1–2 (Mar. 9, 2025). In a declaration signed under penalty of perjury, Hurckes represented:

1. I am an attorney licensed to practice in the State of Florida and was representing Defendants MAH Advising LLC, Ironclad Law LLC, and Michael Hurckes in this matter.

2. On February 26, 2025, I appeared before this Court in connection with this case and informed the Court that I have been experiencing serious and ongoing health issues that have materially impacted my ability to continue representing clients, including in this matter.

3. Due to these health issues, I am withdrawing from all cases in which I am currently counsel of record, including this case, and transitioning my cases to other attorneys within Ironclad Law, LLC and MAH Advising, PLLC to ensure continuity of representation.

4. I acknowledge that a response to the Court's Order to Show Cause was due on March 7, 2025. However, due to my health condition, I was unable to complete and file the required response by the deadline. I sincerely regret this delay and any inconvenience it may have caused the Court or the parties involved.

5. At the February 26 hearing, I explained to the Court that my health condition has made it impossible for me to continue fulfilling my professional obligations. As a result, I have taken the necessary steps to ensure my cases are properly reassigned and that my withdrawal complies with Rule 4-1.16(a)(2) of the Rules Regulating The Florida Bar, which requires an attorney to withdraw if their physical or

39

mental condition materially impairs their ability to represent a
client.

6.  I affirm that Ashanti Palmer Esq., of Ironclad Law LLC assumed
    representation in this matter and will ensure that all obligations in
    this case are met in a timely manner moving forward.

7.  I respectfully request that the Court accept this declaration as my
    formal explanation regarding the Order to Show Cause and grant my
    Motion to Withdraw as Counsel in this matter.

D58 at 1–2 (Mar. 9, 2025).

With the declaration, two disclosure statements were filed, one signed
only "MHA Advising PLLC" and one signed only "Ironclad Law LLC." D59 at
4 (Mar. 9, 2025), D60 at 4 (Mar. 9, 2025), and Palmer (or someone pretending
to be Palmer), filed another notice that she would be representing Hurckes,
MAH Advising, and Ironclad Law (using Hurckes's PACER account), D61 at 1
(Mar. 9, 2025). On the papers purportedly signed by Palmer, unlike Palmer's
notice of appearance, Palmer's Florida Bar number is her zip code. *Compare*
D55 at 1 (correct Florida Bar No. 1025605), *with* D57 at 2, D61 at 2 (zip code
and purported Florida Bar No. "33131"). The statements in those papers
contradicted Palmer's representations made to opposing counsel a few days
earlier. D65 at 4 (May 23, 2025). On March 11, 2025, opposing counsel emailed
Palmer the papers, and Palmer confirmed that she was unaware the papers
had been filed or that her electronic signature had been placed on them. D65
at 4; D65-2 at 1 (May 23, 2025). She said she would request clarification from
Hurckes. D65 at 4; D65-2 at 1 (May 23, 2025).

On March 14, 2025, Palmer conveyed her understanding that the papers
had been re-filed and corrected, and that either she or another associate would
be handling the case. D65 at 5; D65-2 at 3 (May 23, 2025). Opposing counsel

40

expressed concern that the papers had not been re-filed and corrected. D65 at 5; D65-2 at 3 (May 23, 2025).

On March 26, 2025, opposing counsel served Hurckes, MAH Advising, and Ironclad Law with discovery requests. D64 at 3 (May 23, 2025).

On about April 1, 2025, unbeknownst to opposing counsel, Palmer resigned from Ironclad Law. D64 at 3 (May 23, 2025).

On May 6, 2025, opposing counsel emailed Palmer to determine the status of the responses to the discovery requests that had been served on March 26, 2025. D65 at 5; D65-3 at 2 (May 23, 2025). The next day, on May 7, 2025, Hurckes emailed Fisher and said that Fisher would receive a response on May 12, 2025. D65 at 5; D65-3 at 2 (May 23, 2025). Concerned about communicating with a party represented by counsel, and considering Hurckes's undescribed medical conditions, opposing counsel called Palmer. D65 at 5 (May 23, 2025). Palmer informed him that she was no longer associated with Ironclad Law and that the only paper she had ever authorized was the February 8, 2025, notice of appearance. D65 at 5–6 (May 23, 2025) (citing D55).

May 12, 2025, came and went with no response to the discovery requests. That evening, after business hours, opposing counsel inquired about a response and received a response that Palmer no longer worked at the firm and the "office is working diligently on completing these requests as soon as possible." D64-5 at 3 (May 23, 2025).

On May 19, 2025, Palmer wrote the assigned district judge a letter:

Due to technical issues with accessing PACER, and to avoid any further delay, please accept this letter as my formal notice of withdrawal and termination of employment with Ironclad Law.

I would like to provide clarity to the Court regarding information that has been brought to my attention, in relation to recent filings and representation in this matter. I became employed by Michael Hurckes, of Ironclad Law, in February 2025. Thereafter, I filed a Notice of Appearance in this matter, in the later of February 2025. I was then made aware that I had not yet been barred in the Middle District of Florida and could not serve as legal counsel in this matter, also that I Michael Hurckes was already the lead attorney on this matter. I informed Attorney Hurckes that I could not and should not be on federal cases, due to formalities and lack of familiarity. I was assured that this matter would be reassigned to another associate attorney of the firm. I was then contacted by opposing counsel, who informed me that there had been recent filings of court documents, which included my name in the body, and the signature. I was not award of these filings nor the contents therein.

Moreover, I have resigned from Ironclad Law on or about April 1, 2025, and since has had no further association with Ironclad Law. Any pleadings, notices, petitions or motions that have been filed after the month of February, whether it appears to be filed by me or any other associate of Ironclad Law or MAH advising, please note that it was not prepared, filed, approved, reviewed, or authorized by me. I am unaware as to the context of any court document filed in this matter, on behalf of MAH Advising, PLLC.

With this, I respectfully request this Court accept this letter as my Notice of Withdrawal, and not hold me liable for any actions not of my own.

Doc. 65-1 at 1 (May 23, 2025).

On May 23, 2025, Fisher moved to compel discovery responses from Hurckes, MAH Advising, and Ironclad Law, D64 (May 23, 2025), and for the relief provided in this order, D65 (May 23, 2025).

This litigation, including against a defendant appearing to be unrelated to Hurckes, MAH Advising, and Ironclad Law, is ongoing but, as stated, stayed

until a decision on sanctions against Hurckes, MAH Advising, and Ironclad Law is made.

---

**Ordered** in Jacksonville, Florida, June 27, 2025.



Patricia D. Barksdale
*United States Magistrate Judge*

Copies furnished to:

Nathan Hill, United States Magistrate Judge

Tom Sommerville, Esquire
Chair, Grievance Committee, M.D. of Fla., Orlando Div.
Law Office of Thomas Sommerville
820 N. Thornton Ave.
Orlando, FL 32803
tom@sommervillelaw.com

Elizabeth Clark Tarbert, Esquire
Director, Lawyer Regulation Division, The Florida Bar
651 E. Jefferson St.
Tallahassee, FL 32399
tarbert@floridabar.org

Ashanti Palmer, Esquire
8910 Miramar Parkway, Suite 305B #1059
Miramar, FL 33025-4188
apalmer@palmslegalpllc.com