**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF FLORIDA**

**ORLANDO DIVISION**


 SIMON FISHER,

        **Plaintiff**

Vs

MAH ADVISING, PLLC, IRONCLAD

LAW, LLC, IC SYSTEM, INC. and         **Case No.:**

MICHAEL HURCKES,               **6:24-cv-1766**

        **Defendant**

_____/

**<u>RESPONSE</u>**

Attorney Michael Hurckes has led a national litigation practice spanning numerous jurisdictions and supervising a team of attorneys under his direction. Among these attorneys was Ashanti Palmer, whose employment with the firm was ultimately terminated. Over the years, Mr. Hurckes has maintained a deep commitment to client advocacy, overseeing hundreds of active matters while managing firm operations at scale.

1

Toward the end of 2024, Mr. Hurckes began to experience a concerning and progressive decline in health. ███████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ was eventually conducted *See* "**Exhibit A**". It revealed significantly ███████ ███████████████████████████████████████████████████████████ ████████████████████ While physicians currently disagree on whether the underlying condition is ████████████████████████████████ the severity of symptoms forced Mr. Hurckes to confront the reality that he could no longer maintain his full caseload.

After a brief December 2024 trip to visit family and in consultation with his physicians, *See Exhibit G.*  Mr. Hurckes made the difficult decision to step back from the active practice of law. This was formally announced to his team in December 2024. In order to protect client interests, Mr. Hurckes initiated an orderly transition, including hiring new attorneys to assume representation across his docket. Over █████████ matters were reassigned. As is the case with any large-scale hiring initiative, not all attorneys performed to expected standards, and some transitions including the matter at issue were regrettably mishandled.

2

Despite detailed instructions and case assignments, certain critical tasks were either delayed or neglected by incoming counsel. These lapses were not due to indifference but rather occurred amidst an unexpected ███████████ ███████████████████████████

This response is respectfully submitted to address the Court's concerns as identified in docket entries D44, D48, D54, D57, D61, and others. Attorney Hurckes takes full responsibility for procedural oversights that occurred during this period of firm-wide transition and personal medical hardship. Every statement herein is substantiated by exhibits supporting the factual record.

Attorney Hurckes is a tireless advocate for his clients, and the decision to withdraw from practice was made only when it became medically and ethically necessary. He acted in good faith to preserve client rights by reassigning matters and ensuring continued representation. Unfortunately, isolated execution failures by replacement counsel including in this case have led to avoidable consequences.

This document provides context and corrective explanation for the record, and is offered with full transparency to assist the Court in understanding the circumstances that gave rise to these events.

## IN RESPONSE TO SPECIFIC ALLEGATIONS REGARDING THE FISHER MATTER

As part of the ongoing transition of Mr. Hurckes' legal practice, the *Fisher* matter was reassigned to Attorney Ashanti Palmer. In anticipation of this transition:

- The firm sponsored and paid for Attorney Palmer's admission to the U.S. District Court for the Middle District of Florida. See **"Exhibit B".**

- Confirmation was received that she had been successfully admitted.

- Attorney Palmer, with the assistance of her paralegal, Jennifer Sidway, utilized the firm's e-filing account under the ███████████████ to file documents in the case.

At this stage, Mr. Hurckes ceased active involvement in the case and assisted only administratively in helping Attorney Palmer assemble and prepare filings *See* "**Exhibit C"** . Attorney Palmer accepted lead responsibility for the case and affirmatively communicated this to opposing counsel.

Subsequently, Mr. Hurckes filed a notice of withdrawal. Unfortunately, without Mr. Hurckes' knowledge, Attorney Palmer failed to properly manage the matter thereafter. These deficiencies only came to Mr. Hurckes' attention upon receipt of the Court's order referenced in the present allegations.

**1. Filing Documents with Incorrect Florida Bar Number (D57, D61, D65-1 to D65-3)**

The documents cited in D57, and D61were submitted by Attorney Palmer during her transition into the role of lead counsel in the Fisher matter. These filings were made through the firm's electronic portal, which was registered under Mr. Hurckes' credentials. Importantly, however, Mr. Hurckes did not prepare or submit these documents Attorney Palmer and her paralegal were solely responsible. Please *See* **Exhibit E.**

The filings included a clerical error in which Attorney Palmer's ZIP code was mistakenly entered into the field designated for her Florida Bar number. While inadvertent, this administrative oversight was promptly corrected since then the filings reflecting Attorney Palmer's correct Florida Bar number were submitted in the same matter thereafter (*see* **Exhibit D)**.

Additionally, as reflected in **Exhibit E**, Attorney Palmer directly communicated with opposing counsel, affirming her appearance and leadership role in the matter. She also expressed an intent to assume lead counsel responsibilities. Though she later attempted to distance herself from filings such as D65-1, this is contradicted by documented email correspondence (D65-2 and D65-3), which confirm she reviewed the filings and acted as the point of contact.

More troublingly, during the transition, Mr. Hurckes transmitted pending discovery requests to Attorney Palmer for completion and service. She acknowledged receipt

and expressly agreed to handle the disclosures. *See* **Exhibit C**. However, she failed to do so, and there is no record of her notifying Mr. Hurckes or firm leadership that the filings had not been made. This unprofessional neglect contributed directly to the procedural breakdown in discovery compliance and placed both clients and the firm in jeopardy.

Mr. Hurckes had already substantially reduced his litigation involvement and relied in good faith on Attorney Palmer's representation and professional judgment. In fact, Ironclad Law's internal mailroom logs confirm that all relevant court orders including those requiring action were delivered to Attorney Palmer, not to Mr. Hurckes. *See* **"Exhibit K."** Her failure to act upon these notices, coupled with her neglect of discovery obligations, constituted a serious lapse in ethical and professional duty.

This conduct, including the false assertion of being unaware of the content of filings she supervised, undermines the integrity of the defense's procedural posture and reflects individual failings on the part of Attorney Palmer, not Mr. Hurckes or the firm's systems. While the firm regrets the clerical issues that occurred, they arose from Attorney Palmer's breach of her duties not any attempt by Mr. Hurckes to evade responsibility or mislead the Court.

6

**2. Failure to Waive Service of Process – D19, D26**

At the outset of litigation, we evaluated whether jurisdiction over Ironclad Law LLC was proper. At that time, Ironclad Law was a New York limited liability company with no business operations or affiliations in the State of Florida and no connection to any of Mr. Fisher's claims. Upon further analysis we identified meritorious defenses and made a strategic decision to consent to the jurisdiction of the court. This consent was reflected in our motion to dismiss D27, *See* **"Exhibit F"**. which did not raise jurisdiction as a defense thus waiving any objection to personal jurisdiction.

Moreover, Plaintiff has not affected service on Michael Hurckes, Ironclad Law LLC, or MAH Advising PLLC. Despite the lack of service, we have voluntarily appeared and consented to jurisdiction, and we have incurred no expenses or prejudice as a result of the absence of service. Consequently, the issue of service is now moot. By not raising service as a defense, we have effectively waived that objection and further confirmed our consent to the Court's jurisdiction.

**3. Failure to Serve Initial Disclosures by January 13, 2025**

7

The failure to serve initial disclosures by the extended court-ordered deadline of January 13, 2025 (referenced in D36, D39, D50), resulted from a confluence of overlapping disruptions, miscommunications, and personnel transitions, all of which contributed to an unintentional procedural lapse.

On December 31, 2024, Mr. Hurckes filed a motion requesting an extension of the disclosure deadline due to a pre-scheduled vacation. Supporting documents, including travel itineraries, were submitted as **"Exhibit G."** During this vacation, Mr. Hurckes began stepping back from day-to-day practice responsibilities and initiated the transition of his caseload to other team members due to ███████████. The Court granted the extension through January 13.

Around January 14, 2025, responsibility for completing the disclosures was formally delegated to an associate. *See* **"Exhibit H."** At that time, certain supporting documents were still being compiled. When opposing counsel followed up on January 15, Mr. Hurckes truthfully responded that the disclosures were not yet finalized, attributing the delay to document compilation. While accurate, this explanation was later supplemented by additional facts.

Indeed, two separate causes for the delay ultimately came to light: first, a calendaring oversight compounded by the reassignment of the case to an associate; and second, the associate's unexpected termination for professional misconduct

8

specifically, appearing ███████ at a court-ordered mediation *See* "**Exhibit I.**". Although the initial disclosures had been drafted by the associate, they were never finalized or filed due to his abrupt departure.

Complicating matters further, Mr. Hurckes was on medical leave during this critical period, as documented in **Exhibit A**. As a result, internal oversight and case transition protocols faltered, leaving the disclosures unfiled despite reasonable efforts under difficult circumstances.

**4. Violation of the February 6, 2025 Order (D44), Requiring Three Actions**

Although the Court's February 6 Order (D44) required disclosures and explanations by February 12, 2025, full compliance occurred by February 26 due to the medical and staffing challenges described above. Mr. Hurckes was not actively practicing and was under the impression the case was being handled during his medical leave. The delay was not willful. Mr. Hurckes returned to the office on February 24 and immediately addressed the deficiency.

**5. Failure to Properly File Disclosure Statements per D54**

The Notice of Appearance for Ms. Palmer was filed February 28, 2025. At the time, it was not known that she lacked admission to the Middle District. The firm had paid for her admission, and she had told Mr. Hurckes and Firm Management

that she was admitted. *See* **Exhibit B.** Once identified, efforts were made to resolve her admission status. Additionally, Mr. Hurckes's March 9 declaration (D58) did not include certain factual representations made at the February 26 hearing. This was an unintentional omission due to misunderstanding the order's scope. The omitted facts are now restated and confirmed in this response.

### 6. Omission of Key Facts from March 9 Declaration (D58)

During the February 26 hearing, Mr. Hurckes stated that he had delegated the matter to ███████████████ who later exited the firm. *See* **Exhibit I.** Another attorney was then onboarded but not admitted to this Court. These facts, critical to understanding the delay, were omitted from the declaration in D58 due to oversight.

### 7. Continued Legal Activity During Claimed Leave – D46-27, D46-28, etc.

It should be noted that Mr. Michael Hurckes was responsible for transitioning active client matters to new managing attorneys between January 2025 and the present. This large-scale transition was undertaken to ensure that Ironclad Law could continue delivering high-quality legal services while enabling Mr. Hurckes to reduce his personal workload due to health considerations.

Despite decreasing his capacity, Mr. Hurckes remained actively involved in urgent and sensitive matters that could not be delegated. For instance, when a paralegal was discovered to have improperly accessed and attempted to abscond with over 3,000 client records, Mr. Hurckes worked throughout the weekend to draft and file a temporary restraining order in the matter of *Ironclad Law LLC v. April Hand*. (TRO **Exhibit J**)

Mr. Hurckes' primary duty has always been to protect and advocate for the firm's clients. The reassignment process was initiated to further that mission by ensuring clients received consistent representation. Nevertheless, when critical needs arose, Mr. Hurckes stepped in to support both clients and the firm, including situations requiring emergency legal action or ethical intervention.

Importantly, when cases were assigned to other attorneys, it was with the understanding that those attorneys would assume full responsibility. Mr. Hurckes relied on them to fulfill the duties associated with their new roles, particularly in light of the significant number of cases being transitioned.

Although his health had declined, Mr. Hurckes continuously supported the firm's ethical obligations and client service objectives. His decision to transition off the *Fisher* case was not indicative of incapacity, but rather one example among

hundreds of matter reassignments meant to balance workload and maintain client care.

### 8. Inconsistent Representations: Vacation vs. Medical Leave – D38, D67

The explanations previously offered are not mutually exclusive. Mr. Hurckes had a pre-planned vacation during the Christmas holiday, as documented in the attached flight records (*see* **Exhibit G**). This trip was intended for visiting family and coincided with his decision to take a step back from firm operations by bringing on additional attorneys to help manage caseloads due to health issues.

These facts are not inconsistent but rather complementary. At the same time, Mr. Hurckes's health was deteriorating, and he required time off to address serious medical issues. His intent was to responsibly step back from direct practice while still ensuring his clients' interests were protected.

The motion filed on December 31, 2024, referenced the pre-scheduled vacation. Following that, Mr. Hurckes encountered unforeseen health complications that delayed his return in January. While earlier filings did not clearly articulate the overlap between these circumstances, this response is intended to reconcile those facts and clarify the timeline.

### 9. Discrepancy in Disclosure Excuses – D42-1, D51, and D67

The differing accounts reflected in D42-1, D51, and D67 stem from the timing and context in which each explanation was offered. Initially, the failure to file was described as a document preparation delay. This was later supplemented by the calendaring/staff reassignment error. Both accounts are accurate when viewed in context, although neither tells the full story in isolation. Rather than being contradictory, the explanations reflect evolving awareness of the breakdowns that occurred as facts emerged and personnel roles shifted.

**10. Contradiction Between Withdrawal Representation and Continued Legal Activity – D58, D65-4**

In the March 9, 2025 declaration (D58), Mr. Michael Hurckes informed the Court of his intention to withdraw from all active matters due to serious ongoing health concerns. This statement reflected a genuine and structured wind-down of his caseload—not an immediate and complete cessation of all legal activity. Between January 2025 and the present, Mr. Hurckes has overseen the reassignment of most of his **active client matters** to new managing attorneys within Ironclad Law and MAH Advising. This large-scale transition was executed to preserve the quality and continuity of client representation during a period of medical difficulty.

Although Mr. Hurckes significantly reduced his day-to-day practice, he remained involved in urgent or ethically sensitive matters where immediate intervention was

necessary and delegation was not possible. One such instance involved the emergency litigation titled **Ironclad Law LLC v. April Hand**, where a former paralegal attempted to abscond with over 3,000 client records. Mr. Hurckes worked through the weekend to prepare and file a Temporary Restraining Order (TRO) to safeguard client data and the firm's integrity.

This level of involvement was the exception not the norm and was motivated solely by the need to protect the interests of the firm's clients. Mr. Hurckes's participation in these select matters does not contradict his overall intent to step back from legal practice; rather, it reflects his professional obligation to intervene in emergencies when no one else was available or appropriately positioned to respond.

Crucially, when cases were reassigned to other attorneys, it was with the clear expectation that those attorneys would fully assume responsibility for all procedural and substantive requirements. Mr. Hurckes relied on them in good faith, particularly given the high volume of transitions occurring simultaneously across the firm.

His decision to transition off the Fisher matter was one of hundreds of similar reassignments and not indicative of an unwillingness to comply with Court orders

14

or an attempt to mislead. To the contrary, it was part of a firm-wide effort to maintain continuity of service while he responsibly addressed his declining health.

## 11. Pattern of Rule Violations – D9, D10, D27, D28, D38, D40, D50, D52, D58, D59, D60, D62

Mr. Hurckes acknowledges non-intentional Rule violations, including formatting, signatures, service compliance, and updates to contact information. These errors were largely unintentional, and occurred amidst medical challenges and firm disruptions.

## Response Regarding Pattern of Procedural Violations (D9, D10, D27, D28, D38, D40, D50, D52, D58, D59, D60, D62)

Attorney Michael Hurckes respectfully acknowledges the Court's concerns regarding multiple instances of noncompliance with local and federal procedural rules. These included formatting irregularities, service and signature oversights, and delays in updating contact information. Many of these issues arose during a period of medical hardship and firm-wide staffing transitions, and none were made with intent to mislead, delay, or prejudice any party.

Regarding formatting deficiencies under Local Rule 1.08 and the Standing Order (e.g., D9, D27, D38, D51, D58, D62), Mr. Hurckes acknowledges that several

15

documents did not fully conform to typographic or structural requirements. These errors were unintentional and occurred amidst operational strain. To address this, he has implemented rule-compliant templates, formalized pre-submission checks, and conducted staff training on the local rules and court preferences.

While most of Mr. Hurckes's practice has been in state court, he is now familiarizing himself with the procedural standards of the Middle District of Florida and is committed to full and consistent compliance going forward. Updated PACER profiles, internal compliance calendars, and enhanced administrative protocols have been adopted to prevent recurrence of errors such as those noted in D10, D40, D50, D59, and D60.

Defendants respectfully submit this explanation in good faith and request the Court's understanding as they continue their efforts to meet all procedural obligations with care and precision.

## D9 - Failure to Maintain Current Contact Information – Local Rule 2.01(b)(2)(B) (D10)

Mr. Hurckes acknowledges receipt of the Clerk's Notice dated October 4, 2024 (D10), advising him of his duty under Local Rule 2.01(b)(2)(B) to maintain accurate and current contact information with the Middle District of Florida, including telephone number, mailing address, and email address.

The contact information previously on file was outdated due to an administrative oversight that occurred during a period of restructuring within the firm. Once notified via D10, Mr. Hurckes promptly initiated the update of his contact information through the PACER system to ensure compliance with the Rule and proper receipt of future notices.

This oversight was not intentional and did not result in missed deadlines or prejudice to the opposing party. To prevent recurrence, Mr. Hurckes has implemented the following corrective measures:

1. Conducted a full audit of PACER and CM/ECF attorney profiles for all attorneys in the firm;

2. Designated an administrative staff member to oversee periodic profile verification;

3. Added a quarterly reminder to his personal compliance calendar to review all registered contact credentials.

Mr. Hurckes regrets the administrative lapse and respectfully submits that the issue was promptly resolved upon notice, and that efforts are in place to ensure full compliance moving forward.

**D40 (again notifying Hurckes of the need to follow Local Rule 2.01(b)(2)(B) and directing him to update his contact information)**

**Failure to Maintain Updated Contact Information – Local Rule 2.01(b)(2)(B) (D40)**

Defendants acknowledge receipt of the Clerk's second notice dated January 2, 2025 (D40), which reminded Mr. Hurckes of his obligation under Local Rule 2.01(b)(2)(B) to maintain a current telephone number, mailing address, and email address with the Clerk of Court for the Middle District of Florida.

Mr. Hurckes regrets that his PACER/CMECF contact information had not yet been fully updated by the time of this second notice. As previously explained in response to D10, this administrative lapse was due in part to internal staffing transitions and firm-wide restructuring that took place between October 2024 and early 2025. The delay was not willful and did not result in any missed service or prejudice to the opposing party.

Upon receiving the second notice, Mr. Hurckes promptly verified and submitted updated contact details through the PACER system. Going forward, the firm has instituted an internal quarterly review of all attorney PACER profiles to ensure that all contact information remains accurate and up to date.

Mr. Hurckes respectfully apologizes for the delay in complying with this rule and assures the Court that concrete steps have been taken to prevent any future oversight.

**Failure to Properly Serve Filing – Federal Rule of Civil Procedure 5(d)(1) (D50)**

Defendants respectfully acknowledge the Court's concern that the filing of initial disclosures on February 24, 2025 (D50) may not have fully complied with the service requirements set forth in Federal Rule of Civil Procedure 5(d)(1).

Upon review, the document includes a Proof of Service page, which states that service was accomplished by first-class mail. However, the service description appears incomplete, referencing service of a "Complaint" rather than the actual content of the filing ("Initial Disclosures") and lacking specific recipient information. These omissions may have given rise to the Court's finding of procedural deficiency under Rule 5(d)(1).

19

Defendants submit that service was, in fact, attempted and made in good faith, but regret the clerical oversight in the formatting and labeling of the proof of service. The use of mailing—as opposed to electronic service—was due to prior uncertainty over opposing counsel's preferred delivery method, and the notice error in the document was not intended to evade procedural requirements.

To prevent such deficiencies in the future, Mr. Hurckes and Ironclad Law have implemented updated procedures that include:

- Standardized, detailed proofs of service for each filing;
- Mandatory cross-verification of recipient details and content descriptions;
- Use of CM/ECF service whenever available and appropriate.

Defendants respectfully apologize to the Court and opposing counsel for this procedural lapse, and are prepared to re-serve or refile the disclosures in strict compliance if requested.

**Failure to Designate Lead Counsel – Local Rule 2.02(a) (D52)**

Defendants respectfully acknowledge the Clerk's Notice issued on February 26, 2025 (D52), advising Mr. Hurckes of the requirement under **Local Rule 2.02(a)** to designate a single lead counsel in the first filing submitted on behalf of a party.

20

The failure to file a formal Notice of Lead Counsel Designation at the outset of the litigation was an unintentional oversight. At the time, Mr. Hurckes was handling multiple urgent matters while preparing to transition out of active litigation due to health concerns. Although Mr. Hurckes appeared and signed the initial pleadings on behalf of Defendants, the technical designation of lead counsel as required by Rule 2.02(a) was inadvertently omitted.

Following receipt of the Court's notice, the firm began the process of identifying successor counsel and prepared the necessary paperwork for substitution. While administrative delays and attorney transitions affected the timing of the designation, Defendants regret not having corrected the record promptly.

To prevent such procedural oversights in the future, the firm has taken the following measures:

- Instituted a checklist to ensure designation of lead counsel in all initial filings;
- Updated internal protocols to verify compliance with all local admission and appearance rules;
- Assigned administrative oversight to confirm lead counsel notices are timely filed and reflected in the docket.

21

Defendants respectfully apologize to the Court for this omission and are prepared to file a retroactive Notice of Lead Counsel Designation or amended appearance forms should the Court require.

**Missing Signature – Federal Rule of Civil Procedure 11(a) (D60)**

Defendants respectfully acknowledge the Court's reference to Document 60, filed on March 9, 2025, and the concern that it failed to comply with **Rule 11(a)** due to the absence of a proper attorney signature.

Federal Rule of Civil Procedure 11(a) requires that:

> "Every pleading, written motion, and other paper must be signed by at least one attorney of record... The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's attention."

Upon review of D60 the Disclosure Statement filed on behalf of Ironclad Law LLC—it appears that while the name of the filer ("Ironclad Law LLC") is listed on the final page, the submission lacks a handwritten or electronic signature of the attorney of record, contrary to the rule's mandate.

This omission was unintentional and occurred amid a series of filings submitted under urgent circumstances during a period of active reassignment of counsel and

22

administrative strain. The content of the disclosure statement was accurate and filed in good faith, but the technical omission of counsel's signature was an oversight.

**Remedial Action and Preventative Measures**:

- A corrected version of the disclosure statement bearing an appropriate electronic signature can be submitted promptly if permitted by the Court.
- Mr. Hurckes and his administrative team have instituted a two-step filing review protocol to ensure that all pleadings are properly signed and reviewed for technical compliance before submission.

Defendants respectfully request that this isolated procedural deficiency be excused as a clerical oversight and affirm their intent to fully comply with Rule 11(a) in all future filings.

**D62: Local Rules 1.08, 2.02(c), 3.01(g)(2)–(3), and the Standing Order**

**Notice to Counsel Regarding Rule Compliance and Sanctions – Local Rule 1.01(a) and Standing Order (D16)**

Defendants acknowledge that on October 25, 2024, the Court issued a general Notice to Counsel and Parties (D16) directing all parties to review and comply with the revised Local Rules of the Middle District of Florida (effective April 1,

23

2024) and the Standing Orders of Judge Wendy W. Berger, and warning that noncompliance could result in sanctions.

Mr. Hurckes respectfully affirms that he received and reviewed the notice and was aware of the heightened expectations set forth by the Court. While later filings regrettably included some procedural and formatting errors (as addressed individually), these were not due to disregard for the Court's directive, but rather arose from:

- Health-related limitations affecting Mr. Hurckes's capacity;
- Staffing transitions within the firm, including multiple attorney reassignments;
- Unintentional administrative and calendaring oversights during a high-volume period of case management.

Since that time, Mr. Hurckes and Ironclad Law have undertaken meaningful corrective actions to address these issues, including:

- Instituting rule-compliant filing templates aligned with Local Rule 1.08 and Judge Berger's Standing Orders;
- Training staff and attorneys on the Court's updated procedures;
- Implementing a pre-filing review process to catch formatting or compliance issues.

24

Defendants respectfully submit that no violations were made in willful disregard of the Court's expectations outlined in D16. Rather, any procedural deficiencies occurred under mitigating circumstances and are being actively remedied. The firm remains committed to full compliance with all Court rules and orders moving forward.

In addition to the remedial efforts outlined throughout this response, Defendants respectfully submit that a Rule 11 "safe harbor" notice was issued to Plaintiff's counsel pursuant to Federal Rule of Civil Procedure 11(c)(2). This safe harbor notice was sent on May 20, 2025, and identified specific deficiencies in the Plaintiff's filings, including unsupported factual allegations and legal claims asserted without evidentiary basis. A full copy of this notice is attached hereto as **Exhibit L**.

This action demonstrates Defendants' awareness of and respect for Rule 11 procedure not only in avoiding frivolous filings, but also in seeking resolution of such issues in compliance with the procedural safeguards outlined in the Federal Rules.

While this response addresses alleged violations attributed to Defendants, we respectfully request the Court also take judicial notice of the fact that Defendants have abided by the same standards in scrutinizing opposing counsel's conduct and

communicating deficiencies through formal channels when necessary. The Rule 11

notice serves as evidence of that procedural diligence and professional

responsibility.

Defendant fully recognizes the seriousness of the Court's concerns and has taken

concrete corrective steps and submits this response as a good-faith effort to clarify

the record and demonstrate accountability. Respectfully, the Court is requested to

consider the explanations provided and the steps taken to remedy past deficiencies.

Respectfully submitted,

Dated: August 4, 2025.

> Respectfully submitted,
> IRONCLAD LAW LLC
> By: */s/ Michael A. Hurckes*
> Michael A. Hurckes, Esq.
> Florida Bar No. 1040918
> 1200 Brickell Avenue, Suite 1950
> Miami, Florida 33131
> Tel.: (917) 791-0636
> *Attorney For Defendants MAH*
> *Advising, PLLC, Ironclad Law, LLC,*
> *and Michael Hurckes*

26

| S. No | Exhibit No. | Summary |
|---|---|---|
| 1 | Exhibit A (Redacted version) | Lab work report documenting Mr. Hurckes's medical condition during the relevant period |
| 2 | Exhibit B (Redacted version) | Email confirming Ashanti Palmer's onboarding, sent by Ironclad paralegal including firm resources |
| 3 | Exhibit C (Redacted version) | Email correspondence from Attorney Hurckes to attorney Palmer regarding the discovery task, which she agreed to work on |
| 4 | Exhibit D | Filed document reflecting the correct Florida Bar number of Ashanti Palmer |
| 5 | Exhibit E | Email correspondence from Attorney Palmer to opposing counsel affirming her representation |
| 6 | Exhibit F | Defendant's consent to jurisdiction as stated in the Motion to Dismiss (D27) |
| 7 | Exhibit G (Redacted version) | Pre-booked January 2025 flight itinerary for Mr. Hurckes's vacation travel |
| 8 | Exhibit H (Redacted version) | Internal email exchange between paralegal and associate regarding disclosure assignment |
| 9 | Exhibit I (Redacted version) | Irvin's Termination notice |
| 10 | Exhibit J | Temporary Restraining Order (TRO) filed in Ironclad Law LLC v. April Hand |
| 11 | Exhibit K | Confirmation of Court Orders and Case Filings Delivered to Palmer |

27

| 13 | Exhibit L (Redacted version) | Rule 11 Safe Harbor Notice sent to Plaintiff's Counsel (May 20, 2025) |

## CERTIFICATE OF SERVICE

 I HEREBY CERTIFY that a true and correct copy of the foregoing was served this 4th th day of August 2025 via e-filing to all parties or counsel of record for this matter

/s/ Michael A. Hurckes
Michael A. Hurckes, Esq.
Florida Bar No. 1040918
Ironclad Law LLC
1200 Brickell Avenue, Suite 1950
Miami, Florida 33131
E: mh@ironclad.law
Tel.: (917) 791-0636
*Attorney For Defendants*
*MAH Advising, PLLC,*
*Ironclad Law, LLC, and Michael Hurckes*

28